UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES FOBBS, on behalf of himself, and all others similarly-situated,

                                      Plaintiff,

-against-

MASSIVE TRANSPORTATION, INC., d/b/a BLACK SEA TRANSPORTATION, and DURVIJAI PERSAUD,

                                      Defendants.
------------------------------------------------------------------X

Docket No: 18-cv-05002 (RWS)

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action and Class Action Complaint**

Plaintiff James Fobbs ("Plaintiff"), by and through his attorneys, Joseph & Norinsberg, LLC, alleges on behalf of himself and all others similarly situated, as follows:

### NATURE OF CASE

1. Plaintiff brings this action on behalf of himself and on behalf of similarly situated Plaintiffs for Defendants' systemic and continuous violations of: (i) the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"); (ii) the New York Labor Law ("NYLL"); (iii) the requirement that employers furnish employees with an accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195, codified as the New York Wage Theft Prevention Act (the "NYWTPA"); and (iv) any other cause(s) of action that can be inferred from the facts set forth herein.

### PRELIMINARY STATEMENT

2. Defendants provide non-emergency medical transportation services in the Bronx, parts of Westchester, and Manhattan.

3. Plaintiff was employed by Defendants as a driver. During the course of his employment, Plaintiff worked in excess of 40 hours per week without receiving overtime pay as

required by law. When Plaintiff voiced his concerns about Defendants' failure to pay overtime as required by law, Defendants retaliated against him and terminated his employment.

4.     Plaintiff brings this action on behalf of himself and all others similarly situated, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawful wages.

5.     Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3, and for violations of NYLL § 215.

## JURISDICTION AND VENUE

6.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

7.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

9.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**DEMAND FOR A JURY TRIAL**

10. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

11. Plaintiff James Fobbs is an individual who, at all times relevant to this Complaint, has been a resident of the City and State of New York.

12. Between July 5, 2017 and August 17, 2017, Plaintiff was employed by Defendants as a driver. Plaintiff's duties were to pick up and transport patients requiring non-emergency transportation services (for example patients being discharged from the hospital), using a vehicle provided by the company.

13. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL § 190(2).

14. At all times relevant to this action, Defendant Massive Transportation, Inc. d/b/a Black Sea Transportation ("Massive Transportation"), was and is a domestic business corporation, with its principal place of business located at 75 Valentine Street, Mount Vernon, New York.

15. At all times relevant to this action, Defendant Massive Transportation was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Defendant Massive to the FLSA's overtime requirements.

16. At all relevant times, Defendant Massive Transportation exercised control over the terms and conditions of Plaintiff's employment, in that it had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise

work and control of the employees, including the Plaintiff herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

17. At all times hereinafter mentioned, Defendant Durvijai Persaud ("Persaud") was and is a Vice President, manager, supervisor, and/or managing agent of Massive Transportation. At all relevant times herein, Persaud actively participated in the day-to-day operations of the Defendant company, and was an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is, therefore, jointly and severally liable with the corporate Defendant listed herein.

18. At all relevant times, Defendant Persaud exercised control over the terms and conditions of Plaintiff's employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiff herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

19. Upon information and belief, the named Defendants were the "employer" of the Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and NYLL § 190(3).

## COLLECTIVE ACTION ALLEGATIONS

20. Plaintiff brings his FLSA claims on behalf of himself and all similarly situated persons who work, or have worked, for Defendants as drivers at any point over the three years preceding the filing date of this Complaint, and who did not receive overtime pay, at the statutory rate, for all hours worked in excess of forty in the work week (hereinafter, the "FLSA Collective Action").

21. Defendants are liable under the FLSA for, *inter alia*, failing to pay overtime premiums at one-and-one-half times the regular rate of pay. Specifically, Plaintiff and similailry situated employees, were required to work more than 40 hours a week, and Defendants systematically failed to pay Class Members overtime wages at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per work week.

22. There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

23. The identities of the persons in the FLSA Collective Action, including both current and former employees over the relevant period, is unknown, and this information is presently within the sole control of Defendants. Upon information and belief there are at least 40 FLSA members, and there could be significantly more.

24. The precise number of FLSA Collective Action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action members as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

## **RULE 23 CLASS ACTION ALLEGATIONS**

25. Plaintiff brings this action on his own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include: All drivers employed by Defendants during the statutory period who worked in excess of 40 hours per week, and who were denied overtime wages at the statutory rate of one-and-a-half times the standard pay rate, in violation of the FLSA and the NYLL (hereinafter, the "New York Class Action").

26. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiff reasonably estimates there are at least 40 Class Members who reside and work in New York. The precise number of Class Members should be readily available from a review of Defendants' personnel and payroll records.

27. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class Members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendants failed to pay Plaintiff and Class Members the statutory rate of one-and-one-half times their regular rate of pay for all hours worked in excess of forty per work week;

   b. Whether Defendants violated the NYLL through its pay practices;

   c. Whether Defendants violated the NYWTPA by failing to establish, maintain and preserve true and accurate payroll records;

   d. Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

   e. Whether Defendants' violations were willful.

28. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and unlawful payroll policies and practices. Specifically, Plaintiff and Class Members were required to work more than 40 hours a week, and Defendants systematically failed to pay Class Members overtime wages at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per work week. Thus, Plaintiff's claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class Members' claims and Plaintiff's legal theories are based on the same legal theories as all other Rule 23 Class Members, as detailed above.

29. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Plaintiff has retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

30. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically unfeasible for the Rule 23 Class Members to prosecute individual actions on their own given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer.

31. The case will be manageable as a class action because Defendants should have payroll systems that will allow for wage-and-hour calculations in the case to be determined with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

32. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## FACTUAL ALLEGATIONS

33. Defendant Massive Transportation is a corporation that provides non-emergency medical transportation services in the Bronx, parts of Westchester, and Manhattan. Defendant Massive Transportation operates at 299 E. 3rd St., Mt. Vernon, New York.

34. Plaintiff Fobbs was hired by Defendant Massive Transportation and Persaud in the position of driver on or about July 5, 2017. Plaintiff's duties were to pick up patients requiring non-emergency transportation services, using a company-provided vehicle.

35. Defendants provided Plaintiff with an electronic tablet, which had an "app" for Defendants' company. Through this app, Defendants would assign jobs to Plaintiff throughout the day.

36. Likewise, Plaintiff would use the app sign in to work in the morning and sign out of work at the end of the day. Plaintiff would "sign in" to his account using the last four digits of his driver's license number.

37. The company app displayed all of its employees. By scrolling through the names of the employees on the app, Plaintiff saw that Defendants were employing at least 60 other drivers, who were similarly situated to him.

38. Plaintiff was advised by his immediate boss (known to him only as "V.J.") that his rate of pay was $12.00 per hour.

39. Further, V.J. advised Fobbs that he would be paid by direct deposit for all hours worked under forty in a week, and that he would be paid in cash for all hours over forty. V.J. explained that if Plaintiff were to work overtime hours in a given work, he would receive his compensation by going to company's office to pick up the cash that he was owed for those hours.

40. During the second week of his employment, Fobbs worked approximately 49 hours. As expected, the direct deposit issued by Defendants did not reflect any overtime hours. Fobbs then went to the office as directed, and told the secretary his name.

41. In response, the secretary approached a filing cabinet, and produced a little white envelope, with the name "James" on it with had $108.00 inside. This sum reflected the regular hourly rate of $12.00 for the 9 overtime hours Fobbs had worked, rather than the mandatory statutory rate of one-and-one-half times his regular rate.

42. While in the office, Fobbs saw several other little white envelopes, with the names of other employees written on the outside, presumably containing the cash for their overtime hours.

43. Fobbs was dismayed that he had only received straight time rather than time-and-a-half for his overtime hours. Thereafter, Fobbs reached out to "Dave," an acquaintance who

8

worked for Black Sea and who had told him about the job. Dave explained to Fobbs that it was the company's policy to only pay straight time for the overtime hours, and that, he too, only received straight time pay for all hours more than 40 in a workweek.

44. Fobbs then contacted V.J. and asked to be paid lawful wages at the statutory rate, for his overtime hours, but V.J. had no intention of paying Fobbs the correct rate. Instead, V.J. explained that, in his view, Fobbs was already being paid enough for his overtime hours.

45. During his 3rd or 4th week of employment, Fobbs again worked 49 hours. Again, Fobbs went to the office to retrieve his white envelope, and again, he received straight time for his overtime hours, instead of time-and-a-half as required by law.

46. This was unacceptable to Fobbs. On August 15, 2017, Fobbs complained to V.J. that he hadn't received time-and-a-half for his overtime hours, but he received no response. Later that same evening, Fobbs notified V.J. that he had sought legal counsel.

47. The following morning, in retaliation for engaging in protected activity, V.J. ordered Fobbs to return the company truck to the office. It was clear to Fobbs that he was being terminated. Fobbs declined to go to the office and instead asked V.J. to come to his house to retrieve the truck.

48. When V.J. came to Fobbs' house, he demanded that Fobbs return the keys to the truck and Fobbs' tablet from the company. At first, Fobbs didn't want to give back the tablet because it showed conclusively that he had worked over 40 hours during several weeks of his employment. V.J. however, insisted that he return the tablet, and even threatened to call the police if he didn't.

49. It was clear from V.J.'s actions that he was terminating Fobbs' employment in retaliation for Fobbs' complaints about the company's wage violations, and seeking legal counsel.

50. The following day, on August 17, 2017, V.J. admitted that there had been a "mistake" in Plaintiff's compensation, and promised to provide him with the "corrected amount." However, this was a false promise, as Plaintiff never received the full amount he was owed for his overtime hours under the FLSA and NYLL.

51. Shortly after being terminated, Fobbs saw another Black Sea driver in his neighborhood, a male Hispanic. Fobbs told the driver about his experience at Black Sea and the male Hispanic confirmed that, he too, was being paid straight time for his overtime hours. It was evident that this practice was systemic and willful.

52. Defendants engaged in additional wage and hour violations.

53. Specifically, at all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by, and wages paid to, the Plaintiff and the putative class members.

54. Likewise, Defendants failed to provide Plaintiff and class members with accurate wage statements with every pay check, as a portion of Plaintiff's pay was being paid "off the books" at a rate that was inconsistent with the required rate.

55. Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
(Unpaid Overtime under the FLSA)

56. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57. Defendants violated the rights of Plaintiff and Class Members by failing to pay overtime compensation at a rate not less than one-and-one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

58. Defendants' failure to pay Plaintiff and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255. In fact, Defendants purposely paid Plaintiff and Class Members for overtime in cash, at the regular hourly rate, specifically to avoid paying overtime wages.

59. Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Overtime under the NYLL and the NYCRR)

60. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. NYLL § 160 and 12 NYCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

62. Plaintiff and Class Members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-one-half times their regular rate of pay.

63. These practices are in violation of the NYLL and NYCRR.

64. These practices were willful and lasted for the duration of all relevant time periods. In fact, Defendants purposely paid Plaintiff and Class Members for overtime in cash, at the regular hourly rate, specifically to avoid paying overtime wages.

65. By reason of the foregoing, Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
**(Failure to Provide Annual Notices in Violation of the NYLL § 195(1))**

66. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67. Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

68. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a).

69. NYLL § 198(1)(b) provides that any employee not provided with such a notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee (together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief).

70. During the course of Plaintiff's and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

71. Based on the foregoing, Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### **FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Failure to Provide Wage Statements in Violation of the NYLL § 195(3))**

72. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73. Pursuant to NYLL § 195(3), every employer is required to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

74. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with wage statements meeting the requirements set forth above.

75. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

76. During the course of Plaintiff's and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

77. The paystubs provided to Plaintiff and Class Members were woefully inadequate, as they did not reflect any overtime hours worked, or overtime wages paid.

78.  Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Retaliation in Violation of the NYLL).**

79.  Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

80.  Plaintiff Fobbs made a complaint to Defendants within the meaning and scope of § 215 of the NYLL, by questioning the rate of overtime pay due to him.

81.  Plaintiff also engaged in protected activity by notifying Defendants that he had sought legal counsel.

82.  Plaintiff's employment was terminated <u>the very next day.</u>

83.  The temporal proximity between Plaintiff's protected activity and Defendants' adverse employment action gives rise to an inference of retaliation.

84.  By reason of the foregoing, Plaintiff is entitled to all appropriate relief, including, but not limited to, reinstatement, payment of lost and withheld compensation in an amount to be determined at trial, back pay, emotional distress damages, liquidated damages, interests, costs and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for the following relief:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.  Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

    c.    Designating James Fobbs as the Class Representative;

    d.    Designating Joseph & Norinsberg, LLC as Class Counsel.

    e.    Issuing a judgment declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

    f.    Issuing a judgment declaring that Defendants willfully violated the NYLL;

    g.    Granting judgment in favor of Plaintiff, FLSA Plaintiffs, and the New York Class, against Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half (1.5) times Plaintiffs' regular rate, multiplied by all hours that Plaintiffs worked in excess of the prescribed number of hours per week;

    h.    Awarding liquidated damages to Plaintiff, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

    i.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

    j.    Awarding pre-judgment and post-judgment interest to Plaintiff on these damages; and

    k.    Such other and further relief as this court deems just and proper.

Dated:   New York, New York
            September 13, 2018

                              Respectfully submitted,

                              JOSEPH & NORINSBERG, LLC

                              By: _____
                                 Chaya M. Gourarie, Esq.
                                 225 Broadway, Suite 2700
                                 New York, New York 10007
                                 Tel: (212) 227-5700
                                 Fax: (212) 406-6890
                                 *Attorneys for Plaintiff and Putative Class*

TO:

Michael Taubenfeld, Esq.
Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, New York 10007
Main: (212) 571-0700, ex. 102
Fax: (212) 505-2001
*Attorneys for Defendants*

15